Argued October 9; reversed December 23, 1940; rehearing denied
January 28, 1941

INWALL *v.* TRANSPACIFIC LUMBER CO. ET AL.

(108 P. (2d) 522)

*Frank S. Senn*, of Portland (Senn & Recken, of Portland, and Collier H. Buffington, of Gold Beach, on the brief), for appellants.

*Wilber Henderson*, of Portland (Platt, Henderson, Warner & Cram, of Portland, Jay Moltzner, of Gold Beach, and Williamson & Wallace, of San Francisco, California, on the brief), for respondent.

ROSSMAN, J. This is an appeal by the two defendants from a judgment of the circuit court, based upon a verdict, and entered in an action instituted by the plaintiff to recover damages for a personal injury suffered by him May 6, 1938, while he was working in the capacity of a stevedore for the Gorman Steamship Company upon a dock owned by the Transpacific Terminal Corporation. The defendants are the Transpacific Lumber Company and Bruce Cawley, one of its employees. At the time of the plaintiff's injury he, Cawley, the Gorman Steamship Company and the Transpacific Lumber Company, both of which are corporations, were subject to the provisions of the Workmen's Compensation Law, §§ 49-1801 to 49-1845, Ore-

gon Code 1930. The defendants contend that at the time of the injury the Gorman Steamship Company and the Transpacific Lumber Company, plaintiff's employer, had joint supervision over the dock and that the two corporations were engaged at that time upon the dock in the furtherance of a common enterprise, all within the contemplation of the proviso clause of 1937 Session Laws, page 527, chapter 357, which provides that under such circumstances the injured employee must accept the compensation payable under the act and cannot maintain the negligence action otherwise available.

The stockholders of the Transpacific Lumber Company, the Transpacific Terminal Corporation and the Gorman Steamship Company are the same individuals. The three corporations have virtually the same officers. The Transpacific Terminal Corporation maintains a small dock at Port Orford. Three-fourths of a mile from it the Transpacific Lumber Company owns and operates a sawmill. The Gorman Steamship Company owns and operates a single vessel, the Port Orford. The lumber manufactured by the lumber company is transported by motor carriers operated by employees of the lumber company to the dock of the terminal corporation where stevedores in the employ of the steamship company transfer it by powerdriven gears into the hold of the Port Orford. The terminal corporation is engaged in no function other than that of owning the dock premises. The latter is used to no substantial extent by anyone except the steamship company and the lumber company. The steamship company transports no freight in any material quantity for any shipper other than the Transpacific Lumber Company.

May 6, 1938, while the plaintiff was working upon the dock, a carrier operated by the defendant Cawley

collided with him, inflicting the injuries for which redress is sought in this action. It will be observed that the plaintiff's employer was the Gorman Steamship Company. Cawley was in the employ of the Transpacific Lumber Company, owner of the lumber carrier. The aforementioned section of 1937 Session Laws amends the part of our Workmen's Compensation Act which declares that every workman who, while in the employ of an employer subject to the act, sustains an injury by accident arising out of his employment and resulting in his injury, is entitled to receive from the Industrial Accident Fund the sum of money designated for that type of injury. The amendment makes the remaining part of the act read:

"* * * If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death result from the injury, his widow, * * * may elect to seek a remedy against such third person; provided, however, that no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to this act. 'Premises', as used in this section, shall mean the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation."

The dock upon which the plaintiff was injured was so small that the lumber company could store upon it, in anticipation of the Port Orford's arrival, only a small part of that vessel's capacity. Therefore, in order to provide a cargo for the steamship, carriers continuously brought lumber to the dock while loading opera-

tions were in progress. In order to facilitate loading, the carriers brought the lumber to the edge of the dock at the point which was immediately adjacent to the hatch through which the lumber would shortly be transferred to the vessel's hold. Necessarily, the place where the lumber was deposited was the same place where the stevedores were working. They momentarily stepped aside to make way for the carrier. After the carrier had deposited its load and had backed away, the stevedores placed slings around the lumber, then attached the slings to the vessel's tackle and thereupon the gears hoisted the lumber aboard the vessel.

The operations described in the preceding paragraph brought the two crews together. The two crews just mentioned consisted of the employees of the lumber company who operated the carriers, together with their foreman, and the stevedores of the steamship company. It is manifest that the work of both crews was essential to the purpose of bringing the lumber from the mill to the vessel's hold. The foreman of the carrier crew was an individual by the name of Hartsel. The stevedores were under the supervision of the captain of the Port Orford.

Herbert S. McDuffee, president of the defendant Transpacific Lumber Company, and an executive officer of the Gorman Steamship Company, after describing the manner in which the lumber company brought its material to the dock and the operations whereby it was removed from the latter to the boat by the stevedores, was asked: "Do both of those things proceed together and on the same premises at the same time?" He answered, "Yes."

When the plaintiff sustained his injury the operations that were in progress were of the kind above de-

scribed. So far as is indicated by the record, no one was upon the dock at that time except Cawley, his foreman, and the steamship company's stevedores. Further, so far as is indicated by the evidence, no activities were in progress upon the dock except the operation of Cawley's carrier and the transfer to the vessel of lumber which previous carriers had brought to the dock.

■ We quoted in a preceding paragraph the legislative enactment which is applicable to this case. Within the contemplation of that law, the plaintiff's injury was due to the negligence "of a third person (Cawley) not in the same employ" as the plaintiff. The act says that under such circumstances the employee may bring an action against the wrongdoer provided the accident did not occur upon "premises over which he (the wrongdoer's employer) had joint supervision and control" with the injured workman's employer. Next, the act defines the word "premises". The definition which it employs makes that word mean a place where the two employers (both under the act) were "engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes."

The defendants point out that at the time of plaintiff's injury (1) the employees of the lumber company and of the steamship company were the only persons upon the dock; (2) both groups were engaged in the work of getting the products of the lumber company from the nearby mill into the hold of the Port Orford; (3) the duties of the two sets of employees necessarily caused them to intermingle; (4) the two sets cooperated in the prosecution of the work; (5) the work of both groups was necessary to bring the lumber from the mill into the hold of the boat; and (6) the stock of the three

corporations was owned by the same individuals and the three had virtually the same officers.

The plaintiff submits (we quote from his brief):

"McDuffee testified:

"That the Transpacific Lumber Company manufactured lumber, and contracted to place it upon the dock for delivery;

"That the Gorman Steamship Company operated the steamship Port Orford and transported lumber from the dock to market;

"That the lumber was loaded at the dock on the steamer Port Orford by the Gorman Steamship Company;

"That the Transpacific Lumber Company had nothing to do in the nature of payment, direction, control or otherwise, of the employees of the Gorman Steamship Company;

"That the Transpacific Terminal Corporation (a third party) held title to the dock;

"That the dock was not used to any substantial extent by anyone other than the Gorman Steamship Company and the Transpacific Lumber Company;

"That the Gorman Steamship Company supervised its own activities and employees;

"That the Transpacific Lumber Company supervised its own activities and employees;

"That the Gorman Steamship Company ships only inconsequential amounts of lumber or other freight for concerns other than the Transpacific Lumber Company. * * *

"* * * This testimony would, for instance, justify the conclusion:

(a) "That Transpacific Lumber Company and Gorman Steamship Company were engaged each in a distinct business, viz.: The Transpacific Lumber Company was manufacturing lumber and loading it upon the dock, and the Gorman Steamship Company, acting independently entirely of the Transpacific Lumber Company, was loading the lumber upon the steamer, and moving it to market;

(b) "That since each party supervised its own activity and its own employees, each was engaged in a distinct and separate business and undertaking;

(c) "That since others than the Gorman Steamship Company and the Transpacific Lumber Company used the dock there were several distinct undertakings or enterprises being carried forward on the dock;

(d) "That since the Gorman Steamship Company hauled freight for others than the Transpacific Lumber Company it was not necessarily engaged in a joint enterprise with the Transpacific Lumber Company, but might have been jointly engaged with such others.

"We appreciate that it might be said that the Transpacific Lumber Company and Gorman Steamship Company were both engaged in handling the same lumber. This statement might be made also as to every person who touched the lumber from the time it was cut in the woods until it was affixed to and made a part of a building in San Francisco,   *   *   *.''

The above are the only facts upon which the parties depend. It will be observed that in the third division of the plaintiff's summary it is said: "Since others than the Gorman Steamship Company and the Transpacific Lumber Company used the dock, there were several distinct undertakings or enterprises being carried forward on the dock." Whatever may have been the truth concerning that matter at other times, it is clear that at the time of the plaintiff's injury there were no persons upon the dock except the employees of the lumber company and of the steamship company. All of those were engaged in the single undertaking which we have already described. The same observations are applicable to the fourth paragraph of the language which we have just quoted from the plaintiff's brief. The part of the plaintiff's argument which says that a finding that the two corporations were engaged in joint operation of the wharf would include every

person who touched "the lumber from the time it was cut in the woods until ⃰ ⃰ ⃰" ignores the circumstance that the employees with whom we are concerned were not in two separate places, but were on the dock intermingling in the prosecution of their work and within arm's length of one another.

■ The plaintiff points out that the words of the proviso clause are free from ambiguity, and that therefore the rules of statutory construction must not be resorted to. Those rules can never be employed for the purpose of importing ambiguity into language where no ambiguity exists. The words "joint supervision and control" are not novel, nor are they a unique combination. With the last three every youth becomes familiar when he first experiences the urge to test his own sense of responsibility and get out from under the control and supervision of his elders. The word "joint", while a part of every lawyer's kit, is by no means a stranger to the layman. He readily understands that joint rights, joint undertakings and joint responsibilities are shared or participated in by two or more persons acting together. The words in the proviso clause which define the meaning of the word "premises" certainly need no definition. It would be novel to write a dictionary for the purpose of defining the words employed in another dictionary.

The session law with which we are concerned recognizes that at times employers send their employees to perform work upon premises which are not under the exclusive control of the employer. A member of the building trades rarely works upon premises under the exclusive control of his employer. The words which we quoted in preceding paragraphs persuade us that the legislature also had in mind the fact that teamsters,

chauffeurs, etc., work upon, and occasionally become injured upon, premises; that is, public thoroughfares, that are under the control of the public and not under the control of any employers. The circumstances to which we have just adverted, we believe, caused the legislature to limit the proviso to premises which are under the "joint supervision and control" of the employers of the injured workman and the tortious workman. In so stating the requirement, we do not mean to exclude the possibility that other employers may share in the joint supervision and control. But the requirement of joint supervision and control is not the only one. It must further appear that at the time of the injury the two sets of workmen were engaged upon the premises in the furtherance of a common enterprise or the accomplishment of the same or related purposes.

The work in which the two sets of employees were engaged was in getting the lumber from the mill yard into the hold of the Port Orford. Very likely it can be said that the stevedores did not participate in the work of picking up the lumber in the mill yard, and likewise it can be said that Cawley and the other carrier operators took no part in the work of stowing the lumber into the hold of the boat. But neither of those two activities took place upon the premises where the accident occurred. The material point is that when the carrier moved into place upon the dock adjacent to the hatch, and the stevedores temporarily stepped aside, shortly to return and place their slings around the pile of lumber, the two groups were then upon premises of the kind defined in the proviso clause; that is, at that moment both groups were "engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes." They were as much "en-

gaged in the furtherance of a common enterprise" at that place as is the brick mason, the carpenter, the plasterer, the plumber and the electrician in the construction of a house. The services of all those men "in the furtherance of a common enterprise" are essential to the construction of the finished house. In fact, the instructions to the jury expressly stated that at the crucial moment the two sets of employees were engaged in a common enterprise. The following instruction, to which the plaintiff took no exception, is the one which we have in mind:

"The undisputed evidence shows that the portion of the dock at and near the place of the injury did constitute premises on which the Gorman Steamship Company and the defendant Transpacific Lumber Company were engaged in the accomplishment of the same or at least of a related purpose in operation, namely, the purpose of transporting lumber to ships tackle and by ships tackle putting it on the steamer."

Hence, it is clear that at the time of the plaintiff's injury the two groups of employees were "engaged in the accomplishment of the same or at least of a related purpose." To become "engaged in the furtherance of a common enterprise" it is not essential that the workmen formally enter into an agreement to that effect. All that is essential is that they occupy the same premises and perform component parts of a general undertaking. The only issue which remains is the defendants' contention, and the plaintiff's denial thereof, that the wharf was under the joint supervision and control of both employers.

The issue with which we are now concerned is based upon a ruling of the trial judge whereby he declined to

instruct the jury upon the defendants' request as follows:

"* * * That both of these employers were at the time of this accident using this dock and premises in a joint undertaking and that they were engaged in a common enterprise at the time of this accident and because of these facts having been established, I instruct you that the plaintiff cannot maintain this action and your verdict should be for the Transpacific Lumber Company.''

The instruction which was given follows:

"* * * Now, under these conditions, simply because the statute says so, under these conditions the statute says that the question of who was in supervision and control of the premises becomes important. I might repeat a little here—if the Transpacific Lumber Company was in joint control and supervision, joint supervision and control, of the premises along with the Gorman Steamship Company, then under this statute, the plaintiff couldn't sue the Transpacific Company at all. * * * Among other things, I instruct you that you can consider the evidence as to what company had the right to direct the activities of the various workmen, the longshoremen and others, but I also instruct you that the ultimate question involved under the statute is not who controlled the men, but it is this, was there or was there not joint supervision and control of the premises, the place, the dock, where the men were working in the related operation. Now, to summarize that point, if the premises were under the joint supervision and control of both companies, under the circumstances then, the plaintiff couldn't bring this suit. * * *''

■ The burden of proof was upon the defendants to bring themselves within the proviso by proving that the dock was under the joint supervision and control of the lumber and steamship companies. They pre-

sented the evidence summarized in the preceding paragraphs. It is free from dispute. We have also quoted in full the plaintiff's contentions concerning the inferences which he says can be drawn from the evidence. From what we have already said, it is obvious that we find the plaintiff's first and second contentions do not overcome the evidence, which indicates that both employers exercised joint control and supervision over the wharf. Both employers had as much control over it as the various builders who construct a house have over the latter. The third and fourth contentions, as we have already indicated, are inapplicable to the facts of this case.

■ Evidence free from dispute, and from which no conflicting inferences can be drawn, presents no issue for the jury; its disposition is the duty of the judge. Since the plaintiff does not contend that any of the evidence summarized in preceding paragraphs came from a discredited source, discredited itself or was contradicted by other evidence, it must be believed. If the only thing that will avail a party is a guess or an inference which is not predicated upon any fact, he cannot succeed. It is our belief that the evidence in this case, which shows that the wharf was under the joint supervision and control of both employers, is entirely unrefuted. Nothing in the record affords any basis for an inference that either of them failed to exercise control there. Nor does it afford any basis for an inference that the one exercised less control than the other. There is certainly no room for believing that some one other than these two employers was in charge of the wharf. The only legitimate inference which can be drawn from the record indicates that the wharf was under the joint supervision and control of the plaintiff's employer and

the employer of Cawley. That being true, it was error to have refused the requested instruction.

■ The plaintiff says that the defendants did not move for a directed verdict and that, therefore, the assignment of error now under consideration lacks a proper foundation. We believe, however, that the defendants' requested instruction, quoted in a preceding paragraph, was a motion for a directed verdict. It constitutes an adequate foundation for the assignment of error which we have been reviewing.

It follows from the above that the plaintiff is not entitled to maintain this action. By way of explanation, we add that the Gorman Steamship Company, which had not rejected the Workmen's Compensation Act but had failed to make any remittances to the Industrial Accident Commission, immediately following the plaintiff's injury promised in writing to make to him the payments which were due him under the Workmen's Compensation Act. Those payments have been maintained.

This cause is remanded to the circuit court with instructions to enter a judgment in favor of the defendants.

RAND, C. J., and KELLY and BELT, JJ., concur.