Argued February 9, reargued March 3, reversed March 30, 1955

# JOHNSON v. TIMBER STRUCTURES, INC.

281 P. 2d 723

*W. A. Franklin,* Portland, argued the cause for appellant. On the brief were Anderson, Franklin & Landye, Portland.

*Howard K. Beebe,* Portland, argued the cause for respondent. With him on the brief were Maguire, Shields, Morrison & Bailey, Portland.

## LATOURETTE, J.

Plaintiff Harvey M. Johnson brought action against Timber Structures, Inc., a corporation, to recover damages for injuries alleged to have been suffered through the negligence of defendant. Based upon stipulated facts the court entered judgment in favor of defendant. Plaintiff appeals.

At the time of the accident plaintiff was working for Volney Felt Mills, Inc. While delivering sawdust to the premises of Volney Felt Mills, Inc., a driver for defendant Timber Structures, Inc., backed his truck into and against plaintiff and knocked him to the floor causing the injuries complained of. At the time all parties were under the provisions of the Workmen's Compensation Act.

Defendant as a defense to the action claims that at the time of the injury it was on premises over which it had joint supervision and control with plaintiff's employer, bringing it immunity under ORS 656.154, which is as follows:

"(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.002 to 656.590.

"(2) As used in this section 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured work-

man, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.''

The stipulated facts necessary for a determination of this matter are:

''That at all times mentioned in plaintiff's complaint Volney Felt Mills, Inc., was a corporation and was an employer subject to and had accepted the Workmen's Compensation Law of the State of Oregon. Said Volney Felt Mills, Inc., was engaged in the manufacture of roofing felt.

''Defendant Timber Structures, Inc., as well as one other seller sold and delivered in trucks sawdust to said Volney Felt Mills, Inc., which said sawdust was processed into wood flour and used as a necessary ingredient in the manufacture of said roofing felt.

''At the time of the injury sustained or alleged by plaintiff, plaintiff was an employe of Volney Felt Mills, Inc., and the accident arose out of and occurred in the course and scope of his said employment. * * *

''Plaintiff's duties in his said employment were to meet the trucks of the defendant and the other seller as they would come upon the premises of Volney Felt Mills, Inc., inspect said sawdust and accept same if it met certain requirements set by said Volney Felt Mills, Inc.; after acceptance of said sawdust he would direct the drivers where to dump said sawdust; if said sawdust were accepted he would sign a receipt therefor; and thereafter plaintiff would use a sawdust fork to remove said sawdust into a pneumatic sawdust 'sucker' which transported the sawdust to a grinding machine which converted said sawdust into wood flour.

''At the time and place of the accident alleged in plaintiff's complaint, defendant was so delivering to said Volney Felt Mills, Inc., about three or four loads of such sawdust per day.

''Plaintiff's duties required him to be upon said premises and to be about such trucks in order to

perform his aforesaid duties and at the time of said accident only plaintiff and Elwood J. Rollins, a truck driver employed by Timber Structures, Inc., were present upon the portion of the premises where said sawdust was dumped as aforesaid.

"The place where said sawdust was dumped was in a covered and enclosed portion of the said Volney Felt Mills, Inc., plant, which had two doors through which the sawdust trucks of defendant and the other seller could enter."

To determine whether an action will lie against defendant it will be necessary to decide whether or not at the time of the accident, first, defendant had joint supervision and control over the premises with plaintiff's employer, and second, were both employers engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation? If defendant fails to establish either of them it may be subjected to liability. *Atkinson v. Fairview Dairy Farms*, 190 Or 1, 222 P2d 732; *Inwall v. Transpacific Lumber Co.*, 165 Or 560, 108P2d 522.

The act itself does not define joint supervision and control. These words are not of precise import although Webster defines "supervision" as the "Act or occupation of supervising; inspection; oversight." And in *Fluet v. McCabe*, 299 Mass 173, 12 NE2d 89, 93, we read that "the words 'supervision and control' comprehend an exercise of restraint or direction, of authority over, of domination and command." Factual situations differ in cases and no hidebound rule can therefore be laid down.

In the instant case there is, in our opinion, not one iota of evidence indicating that the defendant or its driver had any supervision and control of the premises in question. The defendant was selling sawdust to the Volney Felt Mills. Its driver delivered the sawdust in

defendant's truck to the premises in question and remained inactive while plaintiff inspected, accepted or rejected the sawdust. If accepted the driver received a receipt for the same from plaintiff. Plaintiff then directed the driver to dump the sawdust in a place selected by plaintiff. The driver then departed from the premises. Defendant in no wise exercised any restraint, direction, authority, domination or command over the premises in question. The only control and supervision on the part of the truck driver was that of the truck itself. The fact that the truck occupied the premises is no evidence that the driver exercised control and supervision over the same. It might just as well be argued that a "Fuller brush man" exercises control and supervision over madam's premises when he delivers a whisk broom to her.

Defendant relies on *Brown v. Underwood Lumber Co.*, 172 Or 261, 141 P2d 527, and the Inwall and Atkinson cases, supra. All these cases can be distinguished. In the Brown case, Brown, while scaling logs for the Warner Company, was killed when a log rolled off a truck as it was being loaded by the defendant Underwood Lumber Co. The Warner Company owned the premises where the logs were being loaded onto the truck by the defendant. The Warner Company had domination and control of the premises with the exception of a license given to defendant to use the same for loading purposes. The main question in the case was whether or not the Warner Company and plaintiff were under the Workmen's Compensation Act, which depended upon whether or not Brown was engaged in a logging operation at the time he was killed. Here, then, was a clear case of joint control and supervision of the premises by both parties.

The Atkinson case, like the instant one, involved

delivery of an essential ingredient in the operation of the defendant dairy. But in that case the driver of the dairy truck, who was the injured party, did much more than just deposit the milk as he was directed and then depart. He was engaged on the premises in a number of respects in joint activity with the dairy's employee.

The facts in the Inwall case correspond more nearly with those in the present case. However, there is a marked distinction. In that case plaintiff was a stevedore whose duties were to assist other employees in loading lumber on a ship belonging to his employer, the Gorman Steamship Company. Defendant Transpacific Lumber Company was engaged in delivering lumber to the dock belonging to a third company, Transpacific Terminal Corporation, to be loaded on the aforesaid ship. The stockholders of the three corporations were the same individuals and the officers of all of them were virtually the same. The Lumber Company and the Steamship Company were engaged in the general undertaking of shipping lumber. There was no particular supervision and control of the dock in either party, each having its duties to perform in the furtherance of the common enterprise. When the ship was not in port, the defendant company brought the lumber to the dock and stored it in anticipation of the ship's arrival, but when the ship was berthed plaintiff and his companions stepped aside as the defendant deposited the lumber on the dock. It will thus be seen that both companies had supervision and control of the premises in question.

In view of the foregoing the court erred in finding for the defendant.

Reversed.

TOOZE, J., specially concurring.

I fully concur in the result reached in the opin-

ion. The conclusion therein is based upon a consideration of the words "joint supervision and control" as used in subd. (1) of ORS 656.154. However, that subdivision of the statute uses the word "premises" in connection with the words "joint supervision and control", and the word "premises" is defined in subd. (2). It is this definition of "premises" that has caused much difficulty on the part of the courts in construing the statute. The stumbling block has been in the meaning of the phrase "are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation" used in the definition of "premises". The opinion does not undertake to discuss the matter. There has been much confusion in the decisions, our own included, as to what that phrase actually means. No firm guiding rule has yet been announced by this court; each of our prior cases has been decided upon its own peculiar facts. It is true also that no matter what rule may be established, its application will always depend upon the particular facts before the court. However, in view of the confusion that has been manifested by the courts in their interpretations of that portion of the statute, and in the absence of a definite rule respecting its construction in this state, it seems to me that we should embrace this opportunity to announce a principle that will serve as a guide in all future litigation. With that in mind, and believing, as I do, that the issue is squarely before us in the instant case, I propose to express an opinion as to what the phrase actually means.

To accomplish my purpose, it is necessary that I first briefly review the history of this particular section of the Workmen's Compensation Act. The Workmen's Compensation Act of this state was first adopted

in 1913: ch 112, Oregon Laws 1913. Under § 12 of that Act, it was provided:

"Every workman subject to this Act while employed by an employer subject to this Act, who after June 30th next following the taking effect of this Act, while so employed sustains personal injury by accident arising out of and in the course of his employment and resulting in his disability, or the beneficiaries as hereinafter defined, of such workman in case the injury results in death, shall be entitled to receive from the Industrial Accident Fund hereby created the sum or sums hereinafter specified *and the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury or death* except as hereinafter specially provided; provided, however, that if the injury to a workman *occurring away from the plant* of his employer is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children or dependents, as the case may be, shall elect whether to take under this Act or seek a remedy against such other, such election to be in advance of any suit, and if he take under this Act the cause of action against such other shall be assigned to the State for the benefit of the accident fund." (Italics mine.)

■ Under the circumstances outlined in the first part of the statute, the remedy of the workman to receive compensation under the law was an exclusive remedy. He could not sue a negligent employer for his injuries. Negligence plays no part in the right to compensation. Under the proviso the common law right of the workman to sue a negligent third party was preserved if and when, and only if and when, the injury occurred "away from the plant of his employer". If the injury occurred at the plant of the employer, the workman's sole remedy was for compensation under the Act. As

was said by Mr. Justice RAND in *King v. Union Oil Co.,* 144 Or 655, 665, 24 P2d 345, 25 P2d 1055: "* * * When this statute is read, it seems to be clear that the legislature intended by this proviso to give the right of action to sue third parties, when and only when the injury occurred away from the plant of his employer." See also *Walter v. Turtle,* 146 Or 1, 29 P2d 517; *Hicks v. Peninsula Lumber Co.,* 109 Or 305, 220 P 133.

■■ The statute which denies the workman his common law right to sue for damages for injuries inflicted on him through the negligence of another, being in derogation of the common law, must be strictly construed in favor of the injured workman. Moreover, the provisions of the Workmen's Compensation Act must always be construed most liberally in favor of the injured workman. That principle has become hornbook law of this state.

■ It is elementary that the primary purpose of the Act of 1913 was to afford protection to the workman, and incidentally to protect the employer from expensive litigation. The law dealt, and now deals, primarily with the employer-employe relationship. The proviso respecting rights of action against negligent third persons was not adopted for the protection of such third party wrongdoers, but with a view to protecting the injured workman. The intention of the legislature in this respect is conclusively demonstrated by the further provision giving the injured workman an election between suing the negligent third party or taking compensation under the Act.

Section 12 of the original Act became § 6616, Oregon Laws, and was first amended in 1925: ch 133, Oregon Laws 1925. This amendment dealt largely with the relationship between the accident commission and the workman in the event the workman elected or did not

elect to sue the negligent third party. No change was made in the provision giving the workman an election to sue the third party if the injury occurred "away from the plant of his employer". Section 6616, Oregon Laws, as amended became § 49-1814, Oregon Code, 1930.

The phrase "away from the plant of his employer" became the subject of much judicial discussion. Courts differed as to what was meant by the term. The decisions were far from uniform in determining what constituted the "plant" of the employer within the meaning of the statute. It was generally conceded that the "plant" of the employer did not mean merely the grounds or buildings upon or in which the employer carried on his principal business. It was almost universally held that if at the time and place of the injury the workman's employer had "control" over the particular place of injury, the injury occurred at the "plant" of the employer. As was said in *Walter v. Turtle,* supra, at page 5: "Generally speaking, the plant of the employer may be said to be the machinery, tools and equipment as well as the place where such machinery, tools and equipment are operated in carrying on the business in which he is engaged." The provision as to the right of an injured workman to sue a negligent third party was not peculiar to the Oregon statute and could be found in the Workmen's Compensation Acts of many other states. As illustrative of the discussions respecting what constituted the "plant" of the employer, and the part that "control" over the place of injury played in the same, reference is made to the following cases: *Adasken v. Gilbert,* 165 Mass 443, 43 NE 199, 1 Am Neg Cas 594; *Elliott v. Payne,* 293 Mo 581, 239 SW 851, 23 ALR 706; *Mathewson v. Olmstead,* 126 Wash 269, 218 P 226; *Diblasio v. Hunter,* 124 Wash 98, 213 P 470; *Borough v. Davis,* 121 Wash

577, 210 P 196; *Zenor v. Spokane I.E.R.Co.,* 109 Wash 471, 186 P 849; *Carlson v. Mock,* 102 Wash 557, 173 P 637; Notes in 37 ALR 839, 27 ALR 493, 23 ALR 720, 19 ALR 766.

The broad definition given by the courts to the word "plant", as used in the statute, greatly diminished the right of an injured workman to sue negligent third parties. It proved to be a protection to the negligent third party far beyond what the legislature must have intended.

In the light of the decisions of the courts, including those of this court, which defined the term "plant" with all its attendant consequences, the legislature in 1933 again amended this statute: ch 314, Oregon Laws 1933. A great deal of the matter set forth in the amendment of 1925 was eliminated. The amendment of 1933, so far as material to this discussion, provided:

"* * * If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death result from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person; provided, however, that no action shall be brought against any such third person *if he or his workman causing the injury was engaged at the time of the injury as an employer or workman in the course of an employment subject to this act,* on the *premises* on which the injured workman was employed to work and on which he was injured, unless such injury was deliberately intended." (Italics supplied.)

■ It is manifest from the language of this statute that the legislature clearly intended to extend, rather than to limit, the right of the injured workman to sue negligent third parties. Negligent third parties in general were no longer immune to such an action by

the injured workman, no matter where the accident occurred. The injured workman's right of action against negligent wrongdoers was denied only when such wrongdoer was engaged as an employer or workman in the course of an employment subject to the Workmen's Compensation Act, on the *premises* on which the injured workman was employed to work, and on which he was injured. There was good reason for excepting such employers and workmen from the provision restoring the right of the injured workman to sue negligent third parties.

Under the amendment of 1933, the phrase "on the *premises* of which the injured workman was employed to work", was substituted for the phrase "away from the plant of his employer".

Although it seems that in using this phrase the legislature intended that the word "premises" should have a different meaning from the word "plant" as before used in the law, and that it should comprehend the grounds and buildings upon and in which the employer carried on his principal business, nevertheless, the interpretations given the word by the courts were far from uniform.

The statute, as amended in 1933, remained the law until 1937. In 1937 the legislature adopted the present Act: ch 357, Oregon Laws 1937 (§ 102-1752, OCLA; ORS 656.154).

It will be observed that the 1937 amendment made a definite change in the law as it had theretofore existed. Injected into this act of 1937 were the words "joint supervision and control", and, in particular, the definition given the word "premises" as used in the statute. "Joint supervision" alone was not sufficient to bar the right of the injured third workman of

his common law right of action. There must be a combination of "joint supervision" and "joint control".

■ An independent contractor employed to perform a certain piece of work according to his own methods, using his own equipment and employing his own workmen, with the employer interested only in the "results", ordinarily has complete control over the work, as well as supervision, though the employer may exercise some supervision in seeing that the results are obtained. To constitute "joint supervision and control" over the "premises" would seem to mean more that a mere right of supervision as to results. It must mean an active participation in the work at hand, and by that is meant active participation in and control over the particular work being done.

Under the law as it stood before this Act of 1937, the right of a workman injured on the "premises" of his employer to elect to sue a negligent third party employer or his workmen was denied. If the workman was employed on one part of the premises of his employer and injured through the negligence of a third party employed on another part of the premises in a work wholly disassociated from the actual work of the injured employe, the injured employe was compelled to seek his remedy under the act; he could not sue the third party. But as before observed, "premises" as used in the law must have been intended to be much more restrictive than the phrase "away from the plant" used in the earlier statutes.

Then what was the purpose of the legislature in enacting the amendment of 1937? Clearly, it was not its intent to further restrict the right of election on the part of the injured workman to sue a negligent third party. As we have seen, the history of the legislation shows a clear intent to extend, rather than to

restrict, the right of election. Under the 1937 Act it was only to be in certain specified cases that the injured workman was to be barred of his common law remedy; viz., when his employer and the negligent third person had "joint supervision and control" of the particular work at hand and, in addition thereto, "were engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation."

It is clear that the actual place on the grounds of the employer where the accident occurred is not in and of itself the controlling factor; neither is the fact that plaintiff's separate and independent duties in connection with the business of his employer brought him into the immediate vicinity where defendant's work was being performed, and into such danger as such work might involve.

Plaintiff's employer was engaged in the manufacture of roofing felt. The defendant produced sawdust, a material used in the production of roofing felt. Defendant's only connection with the business of plaintiff's employer was to sell and deliver this raw material. In a remote way defendant participated in the business conducted by plaintiff's employer; that is, it furnished for a price the sawdust necessary for the manufacture of the roofing felt. However, plaintiff's employer and defendant were not engaged in the furtherance of an enterprise common to both, nor in the accomplishment of the same or related purposes. The purpose of plaintiff's employer was to manufacture roofing felt; the purpose of defendant was to produce and sell sawdust. The purposes are neither the same nor in any way related. It is obvious that defendant's product was complete at the time of the accident. The sawdust needed no further help or aid to give it market-

ability. It had achieved the status of being a completely finished and saleable product before it had arrived on the premises of plaintiff's employer. There could be no engagement in the furtherance of a common enterprise so far as defendant's product was concerned with plaintiff's employer or anyone else, there or elsewhere. Defendant's product, so far as the plaintiff's employer was concerned, had reached a "take it as it is or leave it" status. What relation was there between the product of plaintiff's employer and that of defendant? The product of plaintiff's employer would not reach a status of marketability until defendant's product was long after combined with other elements to achieve the finished composition, but defendant had no interest whatever in attaining that result nor was he invited to share in it, nor was his participation in its manufacture at any point necessary to produce the final marketable roofing felt. It is manifest, therefore, that there was no "common enterprise" between plaintiff's employer and defendant.

Let us take the case of a contractor employed to construct a building. His purpose is that of construction. Materials are needed to produce the final result. The producer of brick and tile manufactures, sells, and delivers to the job site the necessary brick and tile; so with the manufacturers of the necessary lumber, cement, nails, glass, and fixtures. Certainly by so doing, these independent manufacturers would not be deemed to be engaged in a common enterprise with the contractor, nor in the accomplishment of the same or related purposes. Their several enterprises and purposes are wholly independent and distinct, although in a sense they each contribute something toward the final result, an erected building. On the other hand, if several contractors or subcontractors are actively engaged at the

same time on the same project and their several employes are exposed to the same hazards created by such mutual engagements, and an employe of one of the employers is injured on the job, such employe's sole remedy would be that of compensation under the act.

If ORS 656.154 is to be construed as defendant contends it should, then the sole test to be applied is whether the particular work or activity at hand contributes directly or indirectly to the ultimate objective of the injured workman's employer on whose grounds the accident occurred. It is manifest that the statute does not intend that.

This particular provision of our law is not to be found in many of the Workmen's Compensation Acts of this country. The first provision of this kind enacted in the United States was enacted by the legislature of the state of Minnesota in 1923: ch 279, Laws of 1923 (13 M.S.A. 194, § 176.06).

■ It is plain that the Oregon legislature obtained its definition of "premises" in the 1937 Act from the Minnesota statute. It is a rule that when a statute of another state is adopted into the statutory law of this state, it carries with it the interpretation placed thereon by the highest court of the foreign jurisdiction. Yet that rule has its exceptions, and, for the reasons hereafter given, the instant statute presents an exception. Had the Minnesota court been uniform in its interpretation of this provision of the statute in its earlier decisions, the situation would have been different, but long before the Oregon legislature enacted the amendment of 1937, the Minnesota court had shown some lack of consistency in its construction of the statute. It had established no definite rule. Its decisions were to some extent in a state of confusion. No doubt this confusion

arose because in its early decisions the Minnesota court had no precedents as a guide; it was pioneering.

The first definite step toward a true interpretation of the definition of "premises" as defined in the Minnesota law (and as defined in our own law), is to be found in the specially concurring opinion of Chief Justice Gallagher (in which Justice Loring concurred) in the case of *Seidel v. Nicollet Ave. Properties Corp.*, 202 Minn 569, 279 NW 570, 573.

The factual situation in the Seidel case was: Seidel's employer was in the business of repairing electric elevators. Defendant owned a large office building where two such elevators were operated side by side. The elevator doors opening into the basement were out of repair, and plaintiff's employer undertook the repair job. New parts were needed to make the doors operate properly. Since it was necessary for defendant in the conduct of its business to keep one elevator in continual use, plaintiff proceeded to repair the other. In doing his work plaintiff desired elevator No. 2 to come down below the first floor, so as to pass therefrom an electric wire with a light bulb into the shaft of No. 1, where he was then working. Defendant's employe, in attempting compliance with this direction, through some misunderstanding lowered the wrong elevator, beneath which plaintiff was working. As a consequence, plaintiff was severely injured. The majority of the court held that a common law action for negligence against defendant could not be maintained because the work being done came within the language of both (a) and (b) in the definition of "premises" contained in the Minnesota statute. It will be noted that defendant's employe at the time of the injury was actively engaged in assisting Seidel in the work at hand.

However, in the specially concurring opinion, the Chief Justice said:

"Under the interpretation given by this court to 1 Mason Minn. St. 1927, § 4291, in Uotila v. Oliver I. Min. Co., 165 Minn. 475, 206 N.W. 937; Rasmussen v. George Benz & Sons, 168 Minn. 319, 210 N.W. 75, 212 N.W. 20; and Olson v. Thiede, 177 Minn. 410, 225 N.W. 391, it may properly be held that plaintiff's employer and defendant were engaged in a course of business in the furtherance of 'related purposes,' in operation on the premises where the injury was received. We confess, however, that we are unable to see how a person engaged in the business of operating an apartment building equipped with elevators and one engaged in the business of repairing elevators can be engaged in a course of business in 'furtherance of a common enterprise.' So to hold would mean that everyone making repairs to or furnishing material for an apartment or commercial building would be engaged in a common enterprise with the owner of the building. We do not believe that such construction was ever intended by the legislature."

Later, in a specially concurring opinion in *Gentle v. Northern States Power Co.*, 213 Minn 231, 6 NW2d 361, 364, Mr. Justice Pirsig discussed the subject in detail and announced a yardstick by which all future cases should be measured. His interpretation of the statute finally became the established rule in Minnesota.

And so in the case at bar, how can it be said that a person engaged in the business of manufacturing roofing felt and one engaged in the business of producing and selling sawdust are engaged in a course of business in "furtherance of a *common* enterprise?" The word "common" as used must be intended to mean "an enterprise" in which there is a mutual interest; not two separate and wholly distinct undertakings.

The Seidel decision was rendered April 29, 1938. On July 29, 1938, the circuit court of appeals for the 8th circuit handed down a decision interpreting this provision of the Minnesota statute. *Pittsburgh Plate Glass Co. v. Carey,* 98 F2d 533.

The plaintiff Carey was an electrician and an employe of the Granite City Elec. Co. of St. Cloud, Minnesota, which was engaged in installing the electric wiring in the Holt Motor Company garage then being constructed. The defendant Plate Glass Co. had already installed the metal work around the windows on the street side of the building preparatory to the setting of the plate glass therein. A big crate of large plate glass had arrived on a truck in charge of the Plate Glass Company's employes. At the time Carey, the plaintiff, and his fellow employe Wiehoff were engaged at the rear of the building. Additional help was needed by the employes of the Plate Glass Company to unload the plate glass, and Wiehoff was asked to render the necessary assistance. However, at the particular time the request for additional assistance was made of Wiehoff, Carey was absent, having gone back to his company's shop for materials. Upon Carey's return, both Carey and Wiehoff proceeded to render assistance in the unloading of the glass. In the unloading process the braces of the crate containing the glass gave away, and the crate with its contents fell on Carey, causing him to suffer serious injuries. He brought action for damages against the Plate Glass Company, and that company defended on the ground that Carey's sole remedy was to take compensation as fixed by the Workmen's Compensation Act of Minnesota.

The right of Carey to elect to sue the Plate Glass Company was upheld in the lower court, and he secured

judgment against the defendant. This judgment was affirmed. The court said:

"Appellant's motion for a directed verdict was based upon the provision of Section 4291 of Mason's Minnesota Statutes of 1927, hereinabove set out. Counsel contend that, although Carey was primarily the employee of the Granite City Electric Company, nevertheless both that company and appellant were engaged in a common enterprise, to-wit, the construction of the Holt Garage, and the injury complained of was received 'in the due coure of business', and 'in the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof'. For this reason appellant insists that the indemnity awarded to the appellee should be measured by schedule 2 of the Minnesota Workmen's Compensation Act of Minnesota [sic], and not by the verdict of a jury in this common law action.

"We cannot accede to this contention under the provisions of the Minnesota law. The Electric Company and the Plate Glass Company were merely subcontractors engaged in totally unrelated activities in the construction of the Holt Garage. Carey and Wiehoff were engaged in putting in the pipe for the electric wiring and were 'working toward the back end of the building away from the street'. The work of the Plate Glass Company was confined to the front of the building, and the truck was parked on the street, a distance of about 120 feet from where the electricians were working. Neither Carey, nor his company through him, was engaged in due course of business in furtherance of a common enterprise, nor was the accomplishment of the same or related purposes in operation at the time when and the place where the injury was received. For these reasons the relationship of an employer cannot be imputed to appellant under the provisions of this Section 4291. * * *.

"The basis of construction is convincingly stated in Smith v. Kedney Warehouse Co., Inc., 197

Minn. 558, 562, 563, 267 N.W. 478, 480, 269 N.W. 633. It is there held that Section 4291 'is peculiar to this state and has often been construed by this court. Of necessity any case arising under it must depend upon its own facts. * * * No two cases are alike, and it would be futile to attempt to distinguish or liken the facts in this case to any we have heretofore decided. The general principles applicable to a test of whether or not the statute applies are well set out in the Rasmussen Case. It was there said [168 Minn. page 324, 210 N.W. page 77]: *"Business is related when the parties are mutually or reciprocally interested in a commercial way; or where the business of one has a necessary relation toward, or in conjunction with the other."* '

"We apply this rule of construction to the facts of this case, and we find no contract, express or implied, between appellant and appellee. The two companies involved were not engaged in the same or related purposes, were not mutually or reciprocally interested in a commercial way, nor had the business of one a necessary relation toward or in conjunction with the other." (Italics supplied.)

In *Gleason v. Geary,* 214 Minn 499, 8 NW2d 808, the Minnesota court reviewed most of its prior decisions and sought to establish a workable rule. The court held the intention of the legislature to be that the common law right of action of the injured employe should be eliminated only in situations like those where several employers are engaged on the same project and their employes exposed to the same hazards created by such mutual engagements. In the decision the following statements are made:

"Many cases involving this troublesome section have come here for review. In the memorandum opinion of the trial judge, after reviewing many of them, he concluded that these 'unfortunately, but perhaps unavoidably, do not give any too accurate a pattern to follow.' As to the first case there

discussed, Uotila v. Oliver I. Min. Co., 165 Minn. 475, 206 N.W. 937, he thought we had not attempted 'to construe the amendment, or lay down rules governing the application of it.' As to subsequent cases, referring specifically to Rasmussen v. George Benz & Sons, 168 Minn. 319, 324, 210 N.W. 75, 212 N.W. 20, and Anderson v. Interstate Power Co., 195 Minn. 528, 532, 263 N.W. 612, which have to do with the delivery of commodities by the vendor to his purchaser, he deemed these to be helpful, as to the facts here presented, only to the extent 'they may lay down the general rules of construction of the act'. It was his thought that the general rule to be followed is that stated in the Rasmussen case, 168 Minn. 324, 210 N.W. 75, 77: *'Business is related when the parties are mutually or reciprocally interested in a commercial way; or where the business of one has a necessary relation toward or in conjunction with the other.'* With this as his general guide and upon the language employed in the decision of Seidel v. Nicollet Ave. Properties Corp., 202 Minn. 569, 279 N.W. 570, the judge concluded that an instructed verdict for defendant was inescapable.

"The importance of the question presented is obvious. Difficulty of solution should not frighten us from trying to find a more 'accurate pattern' for the bench and bar 'to follow' than those one may gather from our prior decisions.

"\* \* \* \* \*

"There can be no doubt that the amendment was remedial legislation. Therefore it should receive such fair and liberal construction 'as to make it a workable one, thereby giving force and effect to the legislative purpose.' Tomasko v. Cotton, 200 Minn. 69, 77, 273 N.W. 628, 632. It should be 'so construed as to give effect to the obvious legislative intent.' 6 Dunnell, Dig. & Supp. § 8937, and cases under notes.

"Legislative intent, however, is to be ascertained from the language employed by the lawmakers. But if that language be doubtful 'that construction must

be adopted which militates against a forfeiture,' where that was the clear legislative purpose. Needles v. Keys, 149 Minn. 477, 479, 184 N.W. 33, 34. * * *.

"That the language of the present enactment comes well within the doubtful class is obvious. The cases we have discussed demonstrate that.

"Prior to the adoption of the workmen's compensation act the injured workman was limited to the common-law action for negligence. He could proceed against his employer or against anyone else whose negligence, as defined by the law and within its limits, had caused him harm. Under the compensation act, adopted in 1913, as construed in Hansen v. Northwestern Fuel Co., 144 Minn. 105, 108, 174 N.W. 726, 727, the person injured in the course of his employment could proceed against his employer, 'or against a third party by a common-law action for negligence.' If he recovered in such an action he could have 'no greater amount than that fixed by the compensation act.' If he took under the compensation act, 'his employer is subrogated to his common-law action against the third party,' and the employer in his action against the third party was 'limited to the amount payable under the Compensation Act.' That case was decided November 7, 1919.

"Later, in 1921, the legislature adopted L. 1921, c. 82, § 31, which superseded L. 1913, c. 467, § 33. This was amended by L. 1923, c. 279, § 1, Mason St. 1927, § 4291. By L. 1937, c. 64, § 5, § 4291 was re-enacted and is now Minn. St. 1941, § 176.06, so that the prohibition in respect to the right of the injured workman against the negligent third party applies 'only where the employer liable for compensation and the other party * * * legally liable for damages were both * * * engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise.' *We think the obvious legis-*

*lative purpose in adopting the amendment was to restore to the injured person an enlarged remedy against the negligent third party.* \* \* \*.

"Unquestionably the legislative purpose was to enlarge the rights and remedies of the injured workman. His employer, under the original act, was well taken care of, and these rights under the second subdivision of the amended act were retained for him. He has lost nothing by the change. Since it was the injured workman the legislature sought to help, we should now say without equivocation that (205 Minn. 254, 285 N.W. 893, 894) *the legislature 'intended that his common law right of action should only be eliminated in situations like those where' several employers 'are engaged on the same project and their employees exposed to the [same or similar] hazards created by such mutual engagements.'*

"The workmen's compensation act was enacted to simplify and rearrange the obligation of the master to the servant in relation to injuries received in the employment. There was no intent to change or interfere with the relation between the servant and third persons or to interfere with the servant's right of action against third persons, except as that right might affect compensation from the master. To step outside of that sphere and deny the servant of his right of recovery against third persons would be to unjustly discriminate against him as compared with other persons injured by third persons and to deprive him of a cause of action left to others. To do so would be beyond the scope of the act as expressed in its title and would not be germane to its purpose. That act evinces no purpose to deprive an employe of such a cause of action under the ordinary relationship, although providing for subrogation in proper cases. *It confines the deprivation of such causes to servants of masters engaged in a common enterprise or in related purposes on the premises where the injury occurs.*" (Italics supplied.)

The rule announced in *Gleason v. Geary,* supra, was again stated and followed by the Minnesota court in the later cases of *Volding v. Harnish,* 236 Minn 71, 51 NW2d 658, and *Swanson v. J. L. Shiely Co.,* 234 Minn 548, 48 NW2d 848, 852.

■ It is my opinion that the Minnesota court finally arrived at a correct interpretation of the statute. We should have no hesitancy in adopting the same rule. Under the rule, before an injured workman can be denied his common law right of action for damages against a negligent third party, three conditions must concur and combine; viz., at the time of the injury (1) the negligent third person must have been an employer subject to the provisions of the Workmen's Compensation Act; (2) he or his workmen causing the injury must have had *joint supervision and control* with the injured workman's employer *over the premises* where the injury occurred; and (3) he and the injured workman's employer must have been engaged in the furtherance of *a comman enterprise* or in the accomplishment of *the same or related purposes in operation,* which means that the injured workman must have been working with the employes of the tortfeasor in a common activity and exposed to the same hazards created by such mutual engagements of the employers.

The fact is noted that the Minnesota statute does not contain the words "joint supervision and control" appearing in subd. (1) of ORS 656.154. The presence of those words in the Oregon statute makes ours a stronger statute in favor of the right to sue a negligent third party.

■ As before noted, at the time and place plaintiff sustained his injuries, defendant and plaintiff's employer were not engaged in the same enterprise or

project; neither did defendant have joint supervision and control with plaintiff's employer over the place where the accident occurred, nor was defendant's employe engaged in a common activity with the plaintiff in the business at hand. Each employe had his own separate and distinct duties to perform in the furtherance of his own employer's separate business and undertaking. Neither did the two employers nor the two employes have anything in common. It is clear that plaintiff had an election under the Workmen's Compensation Act to sue the defendant directly for damages for the injuries he sustained through defendant's negligence.

WARNER, Chief Justice, and LUSK and PERRY, JJ., concur in this opinion by TOOZE, J.