Argued April 8, affirmed April 29, 1959

# CLAUSSEN *v.* IRELAND

338 P. 2d 676

*Sidney I. Lezak,* of Portland, argued the cause for appellant. With him on the brief were Bailey, Lezak, Swink & Gates, Portland.

*Eldon F. Caley,* of Roseburg, argued the cause for respondent. With him on the brief were Long, Neuner & Davis and Donald A. Dole, of Roseburg.

A brief as Amici Curiae was filed by Donald S. Richardson, Frank H. Pozzi, Wesley A. Franklin, W. M. Dale, Jr., Nels Peterson, Burl L. Green and Thomas H. Tongue, all of Portland.

Before McAllister, Chief Justice, and Rossman, O'Connell and Crawford, Justices.

CRAWFORD, J. (Pro Tempore)

This is a third-party action involving application of ORS 656.154. Plaintiff was an employee of Upco Logging Company. Upco had a contract with Umpqua Plywood Company for falling, bucking, yarding, loading and transporting logs to certain of Umpqua's mills. Defendant subcontracted with Upco to haul logs from Umpqua's lands to Umpqua's mills. Haskins was employed by Ireland as a log truck driver. In the course of the loading operation defendant's truck, driven by his employee Haskins, was moved against and over plaintiff. Plaintiff sued and a supplemental answer brought in the Workmen's Compensation Act which concededly covered all interested parties. The trial court, by virtue of ORS 656.324(3) determined as a matter of law:

"That at the time of the accident and injuries, the premises where the accident occurred were under the joint supervision and control of Upco Logging Co., and the defendant; and the plaintiff and his employer and the defendant and his employees were, at the time of said accident and injuries, engaged in the furtherance of a common enterprise or related purposes in operation, that is, the loading and securing of logs upon trucks for transportation to mills in the area of Myrtle Creek, Oregon; * * *." (Conclusion of Law No. 1.)

From a judgment dismissing the complaint plaintiff appeals.

ORS 656.154 reads:

"(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, or if death results from the injury, his widow, children or other dependents, as the case may be, may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.002 to 656.590.

"(2) As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation."

The trial court entered 25 comprehensive findings, the only exception taken being to No. 25 which is identical with conclusion of law No. 1, quoted above. These findings are accepted as the facts of the case, the only questions presented being raised by two

assignments of error. First, the court erred in concluding that defendant exercised *joint supervision and control* with plaintiff's employer over the premises on which the accident occurred at the time of the injury. Second, the court erred in concluding that the plaintiff and his employer and the defendant and his employee were engaged in the furtherance of *common enterprise or the accomplishment of the same or related purposes in operation.*

From the findings we extract the following: Umpqua was engaged in the manufacture of lumber and plywood at mills and was the owner and in possession of land and timber thereon. Upco assigned the trucks used. Plaintiff, a second loader, assisted in loading logs upon the trucks for removal to the mills. Plaintiff was injured at the log landing while engaged in loading defendant's truck and trailer, driven by Haskins. At the time, Upco employed eight men in yarding the logs, six men in decking, one hook tender, one donkey puncher, one chaser, one second donkey puncher (loading engineer), one first loader and one second loader, the plaintiff, "who worked upon the truck directing the placement of the logs thereon and the movement of the trucks, and who removed the tongs when the logs were properly situated." When the trailer cleared the truck on plaintiff's signal, Haskins drove the truck forward and the trailer was lowered to the ground by the loading engineer. Plaintiff signaled Haskins to move the truck until the trailer was directly under the loader, to avoid damage to the truck. Plaintiff checked the automatic locking device. Haskins alighted from the truck, connected the brake air hose and water lines between truck and trailer, and adjusted the weight scales. Plaintiff and the first loader set the cheese blocks.

Plaintiff signaled the driver forward or backward to adjust to the length of the logs. The first loader returned to the log deck, plaintiff remained on the ground, and Haskins returned to the cab. During the loading operation the logs were placed upon the truck as follows:

> "The loading engineer swung the boom of the heel boom loader over the log deck where the first loader attached the tongs to the log he had selected for loading. Upon a signal from the first loader, the loading engineer lifted the log into the air and swung the same into position over the truck. Plaintiff signalled to Haskins by a pre-arranged set of signals directing him to move the truck forward and backward in order to receive the log. When the truck was maneuvered into proper position under the direction of plaintiff, he then signalled the loading engineer and the log was lowered onto the truck. Then the log came to rest. Plaintiff then removed the tongs and signalled to the loading engineer who swung the boom back to the log deck for another log. Plaintiff signalled to Haskins to move the truck forward so that it was out of the way of the next log to be loaded, and thus be out of danger."

Plaintiff performed certain duties on the ground and certain duties from the truck, signalling truck movements. Plaintiff was injured when he climbed down from the truck in the loading operation, incident to placing a binder chain, commonly known as a "gut wrapper", around the logs as a safety measure to protect the men working and the public on the highway. The truck moved forward and struck him.

Had the accident not occurred, the balance of the loading operation would have been as follows: Haskins would alight from the cab, and assisted by plaintiff, affix the gut wrapper. This required two men. Plain-

tiff would stand on top of the truck, the driver remaining on the ground. When binder chains were necessary, plaintiff would assist Haskins. Haskins corrected any unsafe or illegal loading. Plaintiff and Haskins cooperated to load safely and legally and expedite the logging operation.

Plaintiff relies strongly on *Johnson v. Timber Structures, Inc.,* 203 Or 670, 281 P2d 723, and argues that the instant case is controlled by it. Since the Johnson case looms so large in this controversy, we shall consider it first. The essential facts, as stipulated, are these:

Summarizing plaintiff's duties:

1. To meet the trucks.
2. To inspect the sawdust.
3. Accept same if requirements of Volney Felt Mills met.
4. Direct drivers where to dump.
5. Sign receipt for same.
6. Remove sawdust with a sawdust fork.

His duties required him to be upon the premises and about the trucks.

Defendant sold and delivered sawdust to the premises; remained inactive while plaintiff inspected and accepted or rejected; driver received receipt; dumped where told; departed.

■ LATOUREATE, J., held there is "not one iota of evidence" indicating defendant or its driver had any *control and supervision* of the premises." (Italics ours.) He distinguishes *Brown v. Underwood Lumber Co.,* 172 Or 261, 141 P2d 527; *Atkinson v. Fairview Dairy Farms,* 190 Or 1, 222 P2d 732; *Inwall v. Transpacific Lumber Co.,* 165 Or 560, 108 P2d 522. TOOZE, J., (WARNER, C. J., LUSK and PERRY, Justices, concur-

ring) wrote a specially concurring opinion which is the basis for plaintiff's position and to which a large part of his argument is addressed. A quotation from the Johnson case aids in understanding the distinction we draw between that case and the present one. It reads as follows:

"Plaintiff's employer was engaged in the manufacture of roofing felt. The defendant produced sawdust, a material used in the production of roofing felt. Defendant's only connection with the business of plaintiff's employer was to sell and deliver this raw material. In a remote way defendant participated in the business conducted by plaintiff's employer; that is, it furnished for a price the sawdust necessary for the manufacture of the roofing felt. However, plaintiff's employer and defendant were not engaged in the furtherance of an enterprise common to both, nor in the accomplishment of the same or related purposes. The purpose of plaintiff's employer was to manufacture roofing felt; the purpose of defendant was to produce and sell sawdust. The purposes are neither the same nor in any way related. It is obvious that defendant's product was complete at the time of the accident. The sawdust needed no further help or aid to give it marketability. It had achieved the status of being a completely finished and saleable product before it had arrived on the premises of plaintiff's employer. There could be no engagement in the furtherance of a common enterprise so far as defendant's product was concerned with plaintiff's employer or anyone else, there or elsewhere. Defendant's product, so far as the plaintiff's employer was concerned, had reached a 'take it as it is or leave it' status. What relation was there between the product of plaintiff's employer and that of defendant? The product of plaintiff's employer would not reach a status of marketability until defendant's product was long after combined with other elements to achieve the finished composition, but de-

fendant had no interest whatever in attaining that result nor was he invited to share in it, nor was his participation in its manufacture at any point necessary to produce the final marketable roofing felt. It is manifest, therefore, that there was no 'common enterprise' between plaintiff's employer and defendant."

In reaching this conclusion Justice TOOZE refers to the desirability of a guide for determining the meaning of the phrase "are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation." However, he states, "It is true also, that no matter what rule may be established, its application will always depend upon the particular facts before the Court." We do not consider it necessary to review in detail the thoughtful research which led Justice TOOZE to the conclusions he reached and announced in the Johnson case. We seek to apply the law as announced to the Claussen case. We quote from page 695 of the Johnson case:

"It is my opinion that the Minnesota court finally arrived at a correct interpretation of the statute. We should have no hesitancy in adopting the same rule. Under the rule, before an injured workman can be denied his common law right of action for damages against a negligent third party, three conditions must concur and combine; viz., at the time of the injury (1) the negligent third person must have been an employer subject to the provisions of the Workmen's Compensation Act; (2) he or his workmen causing the injury must have had *joint supervision and control* with the injured workman's employer *over the premises* where the injury occurred; and (3) he and the injured workman's employer must have been engaged in the furtherance of *a common enterprise* or in the accomplishment of the *same or related purposes in operation,* which means that the injured workman

must have been working with the employes of the tortfeasor in a common activity and exposed to the same hazards created by such mutual engagements of the employers.

    \*   \*   \*   \*   \*

"As before noted, at the time and place plaintiff sustained his injuries, defendant and plaintiff's employer were not engaged in the same enterprise or project; neither did defendant have joint supervision and control with plaintiff's employer over the place where the accident occurred, nor was defendant's employe engaged in a common activity with the plaintiff in the business at hand. Each employe had his own separate and distinct duties to perform in the furtherance of his employer's separate business and undertaking. Neither did the two employers nor the two employes have anything in common. It is clear that plantiff had an election under the Workmen's Compensation Act to sue the defendant directly for damages for the injuries he sustained through defendant's negligence."

We held in the Johnson case that joint supervision and control means *more than a mere right of supervision* as to *results* and means an *active participation* in the work at hand. As hereinabove set forth, we found the facts in the Johnson case did not come within the exclusion of ORS 656.154.

Notwithstanding the reliance of counsel on the specially concurring opinion in the Johnson case and the consideration we have given it here, it should be observed that the court, in *Hensler v. City of Portland,* 212 Or 28, 34, 318 P2d 313, said, with concurrence of the three judges who concurred in Mr. Justice Tooze's opinion:

"We think that the Inwall case establishes the correct construction of the statute. It was there said that it need not appear that the workmen

> formally entered into an agreement to become engaged in the furtherance of a common enterprise. 'All that is essential is that they occupy the same premises and perform component parts of a general undertaking.' 165 Or at 571. The specially concurring opinion in the Johnson case was not intended to announce a different rule. See 203 Or at 695."

See, also, *Long v. Springfield Lumber Mills, Inc.,* — Or —, 327 P2d 421, 424.

■ In our case Upco and defendant were engaged in performing component parts of a general undertaking on the premises, in which operation they had a common and related economic interest. The employees intermingled and closely cooperated pursuant thereto. Related goals, one common commercial activity and objective, i.e., the loading and securing of logs on trucks for transportation to Umpqua's mills, both employers being under contract to achieve it. The processes were inextricably related. They jointly supervised and controlled the premises and equipment. Similar hazards were involved. They jointly sought to so load as to secure safety and conformity with the law. And each had and actively participated in the exercise of joint supervision and control on the premises in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.

The differences between these two cases are substantial and obvious, as we have pointed out. The Johnson case does not control the Claussen case because of different facts. Applying the legal precepts of the Johnson case to our facts, the conclusion is inescapable that plaintiff has no right of action against this third party defendant.

We appreciate the excellent briefs in this case, including that of Amicus Curiae.

Supporting the conclusions we have reached are, *Long v. Springfield Lumber Mills, Inc.; Atkinson v. Fairview Dairy Farms; Brown v. Underwood Lumber Co.; Inwall v. Transpacific Lumber Co.,* all supra.

Affirmed.