Argued September 9, 1969, reversed and remanded
February 27, 1970

METCALF, *Appellant, v.* ROESSEL et al,
*Respondent.*

465 P. 2d 699

*Jack B. Lively,* Springfield, argued the cause for appellant. With him on the briefs were William Wiswall, A. Duane Pinkerton II, and Sanders, Lively, Camarot & Wiswall, Springfield.

*Richard Bryson,* Eugene, argued the cause for respondent. With him on the brief were Windsor Calkins and J. W. McCracken, Jr., Eugene.

Before Perry, Chief Justice, and McAllister, Sloan, O'Connell, Goodwin,[*] Denecke and Holman, Justices.

HOLMAN, J.

This was an action brought by an employee against an employer other than his own under the theories of common law negligence and the violation of the Employers' Liability Act. Plaintiff sought damages for personal injuries which were inflicted when a defective tree blew across the cab of a logging truck driven by him. The trial court directed a verdict in favor of defendants and plaintiff appealed.

The facts will be recounted in the manner most favorable to plaintiff which is justified by the evidence. Defendants contracted to log and deliver to a mill the timber on a tract of government land. They subcontracted the hauling to plaintiff's employer, an independent hauling contractor.

Defendants set up a landing along the edge of th

---

[*] Goodwin, J., resigned December 19, 1969.

tract to be logged. At the landing, logs were assembled for the purpose of being loaded aboard trucks for hauling to the mill. It was situated at the end of a government logging road, which was 14 feet wide; and, therefore, the trucks, which were 8 feet wide, could pass only at turnouts of greater widths. Approximately 350 feet along the road from the landing there was such a place, which provided sufficient space in which to turn a truck around. It was located outside the area where defendants were permitted to log. However, defendants set up the landing with this wide area in mind as a place where trucks could be turned around prior to loading and also as a place where trucks could wait their turn to load without blocking the road. The truck drivers were directed by defendants to this effect. This relieved defendants of the necessity of providing an additional area for these purposes at the landing. The trucks backed from the turnout to the landing for loading.

The trucks hauling from this area customarily used four binder chains to hold the load in place while traveling. Ordinarily, binder chains are put on as part of the loading process. The landing and the placing of the logs on the truck were under the control of defendants. In order to load the trucks out as rapidly as possible, it was the habit of defendants' foreman at the landing (unless the load was exceptionally dangerous) to direct the trucks to pull out after only one or two binder chains had been put on. The truck drivers would then stop somewhere down the road to put on the balance of the binder chains. They customarily used the truck turnout for this purpose, and defendants were aware of this.

Immediately prior to the accident, the loading of plaintiff's truck was completed and one binder chain

was put on. Plaintiff then drove away from the landing onto the road, along which he proceeded to a point at approximately the location of the truck turnout, when the cab of his truck was struck by a defective wind-felled tree located on the side of the road.

Plaintiff states the question on appeal as follows:

"The basic question on appeal is whether or not the Employers Liability Act, as presently interpreted in Oregon, applies to the fact situation presented in this case * * *."

Plaintiff contends that the acts of turning the truck around, awaiting loading, and putting on the binder chains were all part of the loading process under the control of defendants and, therefore, defendants owed him the duty under the act to use every care and precaution to make safe the place where these activities were carried on. He claims defendants did not comply with the act in that they failed to inspect for and to cut down defective trees when government permission to do so was available if requested.

■ ORS 654.305 specifies the duties imposed by the Employers' Liability Act upon an employer. It provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

In order for the defendants to be subject to the duties imposed by the act, they must have had charge of, or have been responsible for, the work in which plaintiff was engaged at the time of the accident. These requirements have been interpreted in the terms of defendants' control over the work. *Wilson v. P.G.E. Company,* 252 Or 385, 390, 448 P2d 562 (1968) ; *Thomas v. Foglio,* 225 Or 540, 546, 358 P2d 1066 (1961).

■ It is obvious that, at the time of the accident, the defendants did not have control over the actual work which plaintiff was performing. Plaintiff was not doing anything connected with the loading process. He was driving the truck to the mill. It is true he would have had to stop somewhere to put on the remaining binder chains. However, it cannot be said that defendants owed plaintiff a duty to keep safe all of the area which he traversed until he chose to put them on. If defendants owed a duty to plaintiff, it was because plaintiff was at a place that defendants had adopted and had taken under their control as part of the landing and which was necessary to the completion of the loading operation. The probative question is whether, under the act, the control of the premises upon which plaintiff was injured amounts to sufficient control over the work plaintiff was performing to bring defendants within the purview of the act. We hold that it does.

The following language has been used in *Byers et al v. Hardy et al,* 216 Or 42, 48, 337 P2d 806 (1959) and quoted with approval in *Thomas v. Foglio, supra* at 547 :

"* * * It is only those whose employment or duties require them to be about machinery of an employer other than his own or whose duties may

require such person to expose himself in or about hazardous conditions or structures of such other employer which are prohibited or circumscribed by the Act * * *."

Plaintiff's duties required him to expose himself to the hazards of an area which defendants had adopted and had designated as a place to perform those functions normally connected with the loading in the landing area. As a result, defendants owed a duty to plaintiff to use that degree of care specified by the act to make the area safe for plaintiff whenever he was doing anything that furthered the common enterprise of his employer and defendants.

The judgment of the trial court is reversed and the case is remanded for a new trial.